```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
MANUEL CAMBRERO,                :
                                :             PRO SE
            Petitioner,         :
                                :      05 Civ. 7654 (KMW)(THK)
     -against-                  :
                                :      REPORT AND RECOMMENDATION
JOHN W. BURGE, Superintendent,  :
Elmira Correctional Facility    :
                                :
            Respondent.         :
-------------------------------X
```
**TO: HON. KIMBA M. WOOD, UNITED STATES DISTRICT JUDGE.**
**FROM: THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

Petitioner Manuel Cambrero was convicted of Criminal Possession of a Weapon in the Second and Third Degrees (New York Penal Law §§ 265.03(2) and 265.02(4)), following a jury trial in New York State Supreme Court, New York County.  He was sentenced as a second felony offender to concurrent terms of incarceration of five to ten years and three and one-half to seven years, respectively, and he is currently serving his sentence in Otisville Correctional Facility.  Petitioner now seeks habeas corpus relief, pursuant to 28 U.S.C. § 2254, claiming that he was deprived of the right to be present at pretrial hearings when, despite his request for an interpreter, the hearing court conducted the hearings without an interpreter.

This proceeding was referred to this Court for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons that follow, the Court recommends that the Petition be denied and the action dismissed with prejudice.

**BACKGROUND**

I. <u>Factual Background</u>[1]

At approximately 2:30 p.m. on December 25, 1982, brothers Luis and Victor Crespo were walking north on Amsterdam Avenue, near 184th Street, on their way to a park. Two men pulled up alongside them in a green Chevrolet Blazer. The passenger in the car, who was identified as Petitioner, ordered the Crespos to stop; he then jumped out of the car, carrying a gun, and accused the brothers of trying to steal his car. Victor Crespo claimed that he did not know anything about the car, and the Crespos both told Petitioner that he was mistaking them for other individuals. Petitioner went through Victor's pockets, while the driver of the vehicle, Louis Maleck, searched Luis. Petitioner repeatedly struck Victor in his chest with the gun. Luis, concerned that the gun might discharge, stepped toward Petitioner and pleaded with him to leave Victor alone. Petitioner struck Luis in his right eye with the barrel of his gun. After the driver concluded that the Crespos had not attempted to steal Petitioner's car, he and Petitioner jumped back into the car and drove away.

A short time later, the Crespos flagged down two police officers patrolling in their police car — Officer Edward O'Neill and Officer Robert Spottke — and told the officers that they had

---

[1] Petitioner raises no claims relating to the facts adduced at his trial, and, therefore, the trial evidence will be summarized without page references to the trial transcript.

been robbed and threatened by two men with a gun. They described their assailants and their car, including its license plate number. The officers told the Crespos to go to the precinct to file a complaint, while they canvassed the neighborhood. A few minutes later, the officers spotted Petitioner and Maleck, both of whom matched the descriptions the Crespos had given. Petitioner and Maleck were standing across the street from a green Chevrolet Blazer which had the same license plate number the Crespos had given the officers. Upon seeing the officers, Petitioner reached into his waistband, turned around, bent down briefly beside a parked car, and then immediately walked away. The officers ordered Petitioner and Maleck to stop, and then went to the spot where Petitioner had been standing when they saw him bend down. There, on the ground, between the curb and the front tire of the parked vehicle, the officers found a .380 caliber semi-automatic pistol. Both the gun and the six rounds of ammunition it contained were found to be operable.

Petitioner and Maleck were arrested and driven to the precinct. At some point after he was arrested, Petitioner told the police that "he didn't know what was going on," because he "was only defending his property." The Crespos, who were standing outside the precinct, spontaneously identified Petitioner and Maleck as their assailants. At the trial, the Crespos identified Petitioner as the man who assaulted them, and the officers

3

identified Petitioner as the person they arrested after seeing him place the gun on the ground.

Petitioner, his son, and several other witnesses testified on Petitioner's behalf. Essentially, Petitioner testified that, on the day of the incident, he looked outside his living room window and saw two men who appeared to be urinating near his car. While he ate lunch, his wife continued to look out of the window and, at some point, told Petitioner that the two men were breaking into his car. Petitioner ran outside, and, with a friend he encountered, chased after the two men, but was unable to catch them. He and his cousin then searched the area in Petitioner's Chevrolet Blazer, but, according to Petitioner, he did not see the men who attempted to steal his car. When he returned home and examined his car, he saw that various items were missing from the car. While he was inside the car, the police arrived and asked him if he was the owner of the Blazer. When he admitted that he was, they threw him against the vehicle and started beating and searching him. According to Petitioner, as well as his friend, the gun the police picked up was about three car lengths from where Petitioner had been standing when the police arrived on the scene. When asked, he denied owning the gun.

The jury returned a verdict acquitting Petitioner of attempted robbery charges, but convicting him of Criminal

4

Possession of a Weapon in the Second and Third Degrees.[2]

Petitioner failed to appear for his sentencing, and a bench warrant was issued.  Nineteen years later, on November 12, 2002, after being involuntarily returned on the warrant following his arrest on unrelated charges, Petitioner was adjudicated a second felony offender and was sentenced to concurrent prison terms of five to ten years and three and one-half to seven years. (See Respondent's Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, dated Nov. 21, 2005 ("Resp't Mem."), at 5-6.)

II. Post-Trial Proceedings

In his appeal to the Appellate Division, First Department, Petitioner claimed that: 1) he was deprived of the right to be present when the hearing court conducted pretrial proceedings without a Spanish interpreter; and 2) his sentence was excessive. (See Brief for Defendant-Appellant, dated June 2004, attached as Exhibit ("Ex.") A to Declaration of Assistant Attorney General Luke Martland in Opposition to Petition for a Writ of Habeas Corpus ("Martland Decl.").)  In a decision dated May 5, 2005, the

---

[2] Under the relevant provision of the New York Penal Law, a person is guilty of Criminal Possession of a Weapon in the Second Degree "when, with intent to use the same unlawfully against another, such person possesses a loaded firearm." N.Y. Penal Law § 265.03(1).  Since repealed, at the time of Petitioner's conviction a person was guilty of Criminal Possession of a Weapon in the Third Degree when he "possesse[d] any loaded firearm" outside of his home or place of business. N.Y. Penal Law § 265.02(4).

5

Appellate Division unanimously affirmed Petitioner's conviction. See People v. Cambrero, 18 A.D.2d 225, 794 N.Y.S.2d 366 (1st Dep't 2005). On May 20, 2005, Petitioner sought leave to appeal to the New York Court of Appeals (see Ex. D to Martland Decl), and on June 28, 2005, the Court of Appeals denied Petitioner's leave application. See People v. Cambrero, 5 N.Y.3d 760, 801 N.Y.S.2d 254 (2005).

In the instant action, Petitioner reasserts his claim that he was deprived of his right to be present when the hearing court failed to provide an interpreter at pretrial hearings. Respondent concedes that the Petition is timely and that Petitioner has properly exhausted his claim. (See Resp't's Mem. at 7-8.)

**DISCUSSION**

I. Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a state court conviction "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

6

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413, 120 S. Ct. 1495, 1523 (2000); accord Leslie v. Artuz, 230 F.3d 25, 32 (2d Cir. 2000); Clark v. Stinson, 214 F.3d 315, 320 (2d Cir. 2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings — not dicta — of the Supreme Court as they existed at the time of the relevant state court decision. See Williams, 529 U.S. at 412, 120 S. Ct. at 1523; accord Leslie, 230 F.3d at 32.

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413, 120 S. Ct. at 1523. The inquiry for a federal habeas court is not whether the state court's application of the governing law was erroneous or incorrect, but rather whether it was "objectively unreasonable." See id. at 409-10, 120 S. Ct. at 1521-22; see also Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001) ("[A] federal habeas court is not empowered to grant the

7

writ just because, in its independent judgment, it would have decided the federal law question differently. The state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable."); Lurie v. Wittner, 228 F.3d 113, 128-29 (2d Cir. 2000) (same).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir.) ("This presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied, 540 U.S. 1091, 124 S. Ct. 962 (2003). "A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003).

II. Right To Be Present

Petitioner contends that he was denied the right to be present at the pretrial proceedings in his case because, despite his request for a Spanish interpreter, the hearing court proceeded without an interpreter. In addressing this claim, the Appellate Division concluded that Petitioner was not deprived of

his right to be present because "[t]he record is replete with evidence of [Petitioner's] competency in English, including his detailed colloquies with the court and his trial testimony. After our review of the entire record, we hold that the evidence conclusively establishes that [Petitioner] was fully capable of speaking and understanding English." People v. Cambrero, 18 A.D.3d at 225-26, 794 N.Y.S.2d at 336-37.

Respondent argues that Petitioner is not entitled to habeas relief on this claim because he did not have a clearly established right to have an interpreter at the pretrial proceedings, and the Appellate Division's factual determination that Petitioner was fully capable of participating in the proceedings because he had a proficient ability to understand and speak English was reasonable and is entitled to deference.

The facts underlying this claim are as follows.

### A. Factual Background

At the commencement of pretrial proceedings, on August 23, 1983, in response to the court's inquiry as to whether there were any applications, defense counsel stated that Petitioner wanted to address the court "but he doesn't want to do that unless there is an interpreter to aid him." (Hearing Transcript ("H. Tr.") at 2.) The court replied, "[w]hy don't we wait and we'll eventually find an interpreter." (Id.) The court then indicated that it was going to proceed with the Wade and Huntley hearings. What

9

followed was a colloquy among the court, defense counsel, and the prosecutor, which addressed the issue of what prior convictions could be used to cross-examine Petitioner. The court determined that it would not permit the use of a prior misdemeanor conviction, but would permit Petitioner to be questioned about a prior burglary conviction. (H. Tr. at 5.)

The court then advised Petitioner that it was going to proceed with the suppression hearing, and indicated to Petitioner that,

> since we talked a little bit this morning I am reasonably relaxed about going forward with the hearing. But, if for any reason you have specific concerns, this specific lack of understanding of what the police officers are saying, please let your counsel know and he does not appear to be bashful or afraid to talk. You will let me know. You understand that?

(H. Tr. at 5.)

The following discussion then ensued.

> Petitioner: A little bit. I don't know what to say. I don't feel comfortable. I need an interpreter to - - most of the words you say I really don't understand it.
>
> The Court: Well –
>
> Defense Counsel: May I - - without, I did discuss this case with my client. I think three or four times prior and we had some problem of understanding. I don't know whether he did. But, apparently, when because he went to make an application before Your Honor to have me relieved that would give credibility to his thinking.
>
> The Court: If it had anything to do with your lack of understanding and that has anything to do with language problems - -

10

>    Defense Counsel: It could have been.  I do not know how far to go.
>
>    The Court: What is your application with respect to Mr. Cohen so far as you can articulate it without an interpreter?  We'll give you another chance.
>
>    Petitioner: You know, this is the first time that I have talked to him about the case.  I have never talked to him about the case.  Never, you know.
>
>    The Court: Well, he seems to say that you spoke three or four times.
>
>    Petitioner: Doesn't seem he's very interested in the case.  I called him several times to his office, left a message with my phone number to my house.  He never called me back to go and see him so I see that he's not interested in . . . helping me.

(H. Tr. at 5-6.)

There then followed a discussion about Petitioner's contention that his attorney had not spoken to him about the case.  Counsel confirmed that he and Petitioner had discussed the case three or four times, but not at his office because they could not schedule a mutually convenient appointment. (H. Tr. at 7-9.)  Defense counsel opined that he should be relieved because Petitioner did not have confidence in him. (H. Tr. at 8.)  The prosecutor argued that in the many prior court appearances on the case, Petitioner never expressed a desire to replace his attorney, and that Petitioner's attempt to discharge his attorney at that time was a ploy to delay the hearings and trial. (H. Tr. at 9-11.)  When the court asked Petitioner if he had anything further to say, he stated that he needed more time to discuss the

11

case with his attorney. (H. Tr. at 12-13.) The court denied the motion for substitution of counsel, and the motion to delay the trial, and then stated: "We are going to proceed with the hearing, and if we get an interpreter, I assume she will appear or he, and if we don't get one he or she will not appear, and tomorrow morning when we go to pick a jury if we need to go that far, you have made these needs known." (H. Tr. at 13.) The court clerk indicated that an interpreter had been ordered, and defense counsel reiterated his concern about continuing without an interpreter. (Id.)

Thereafter, a Wade/Huntley hearing was conducted to address Petitioner's motions to suppress his identification by the Crespos, as well as his post-arrest statement. An interpreter was not present at the hearing. At no time during the hearing did Petitioner or defense counsel state or indicate that Petitioner was having any difficulty understanding what was being said. The court reserved decision and then told Petitioner that he was expected in court the following morning, and that if he failed to appear the court would proceed without him and he would be subject to charges for bail jumping. The court asked if Petitioner understood, and Petitioner said that he did. (H. Tr. at 80.)

The next morning, the court denied Petitioner's suppression motions. At no time did Petitioner or his attorney indicate that

Petitioner had any problem understanding the court's ruling. Immediately thereafter, the clerk noted the presence of a Spanish interpreter, who remained present throughout the trial. At trial, Petitioner testified on his own behalf. Defense counsel advised Petitioner that there would be an interpreter standing near him, and if he needed her services he should not hesitate to call upon her. Petitioner replied "okay." (Trial Transcript ("Tr.") at 299.) Petitioner then testified predominantly in English. In fact, when defense counsel explicitly asked Petitioner if he would be more comfortable testifying in Spanish, he replied "no" and continued testifying in English. (Tr. at 312.) In his testimony, which covered approximately forty pages of the trial transcript, Petitioner accused the complaining witnesses and police of framing him, and he alleged that he was the victim of police brutality. At one point, in describing what occurred after he was arrested, Petitioner stated that his rights were read to him in English and he responded that he understood, but his cousin did not speak English and, therefore, his rights were explained in Spanish. (Tr. at 323, 334.) On a limited number of occasions, Petitioner conferred in Spanish with the interpreter before giving his response in English. (See Tr. at 312, 314, 318-19, 322.) During cross-examination, he gave a handful of responses in Spanish. (See Tr. at 329, 331, 333, 334,

336, 338.)[3]

B. <u>Analysis</u>

Respondent argues that Petitioner's claim must be dismissed because "the Supreme Court has never held that the right to be present includes a right to have the proceedings translated, or that a defendant has a constitutional right to an interpreter." (Resp't Mem. at 10-11.)  Therefore, according to Respondent, the Appellate Division's holding — that Petitioner's right to be present at his pretrial hearing had not been violated — was neither contrary to, nor an unreasonable application of, Supreme Court precedent. (<u>See</u> <u>id.</u> at 11.)  Respondent further argues that, in any event, the Appellate Division's factual determination that Petitioner is competent in English is entitled to a "presumption of correctness" which has not been rebutted by clear and convincing evidence. (<u>See</u> <u>id.</u> at 11-12.)

Respondent is correct that the Supreme Court has never explicitly held that a defendant has a constitutional right to have trial proceedings interpreted. <u>See</u> <u>United States v. Johnson</u>, 248 F.3d 655, 663 (7th Cir. 2001) ("The United States Supreme Court has yet to recognize the right to a court-appointed

---

[3] In his summation, the prosecutor noted that when Petitioner responded to his own attorney's questions, he always spoke in English, but on cross-examination, when put on the spot, "all of a sudden" he needed an interpreter and responded in Spanish. The prosecutor argued that Petitioner was simply being evasive. (Tr. at 418.)

interpreter as a constitutional one."); Rivera v. Burge, No. 03 Civ. 2596 (PKC)(GWG), 2004 WL 1276711, at *11 (S.D.N.Y. June 10, 2004) (noting that "the Supreme Court has not directly spoken on the issue"). In its only direct pronouncement on the issue, the Court has stated that the decision to appoint an interpreter while a defendant is testifying "is a matter largely resting in the discretion of the trial court." Perovich v. United States, 205 U.S. 86, 91, 27 S. Ct. 456, 458 (1907). Thus, the Appellate Division's determination was not contrary to clearly established Supreme Court law.

Nevertheless, the Supreme Court has clearly recognized the basic rights of a defendant to confront and cross-examine witnesses, see Pointer v. Texas, 380 U.S. 400, 404-05, 85 S. Ct. 1065, 1068 (1965), to consult with counsel, see Dusky v. United States, 362 U.S. 402, 80 S. Ct. 788, 789 (1960), and, most importantly, to be present at trial, unless, by his conduct, a defendant waives that right, see Kentucky v. Stincer, 482 U.S. 730, 745, 107 S. Ct. 2658, 2667 (1987); United States v. Gagnon, 470 U.S. 522, 526, 105 S. Ct. 1482, 1484 (1985); Illinois v. Allen, 397 U.S. 337, 342-43, 90 S. Ct. 1057, 1060 (1968); Lewis v. United States, 146 U.S. 370, 372, 13 S. Ct. 136, 137 (1892). Thus, if a defendant neither speaks nor understands English, and cannot communicate without the assistance of an interpreter, the failure to appoint an interpreter could result in a violation of

these fundamental rights. As the Second Circuit has concluded, "an indigent defendant who could speak and understand no English would have the right to have his trial proceedings translated so as to permit him to participate effectively in his own defense. . . . ." United States v. Negron, 434 F.2d 386, 389 (2d Cir. 1970) (affirming grant of habeas relief where defendant was totally unable to understand or communicate in English, such that "most of the trial must have been a babble of voices," where defendant "[s]at in total incomprehension as the trial proceeded"). Therefore, had these been the circumstances at Petitioner's pretrial hearings, the failure to appoint an interpreter could be viewed as an "unreasonable application" of clearly established Supreme Court law providing for the right to be present at trial, to confront witnesses, and to consult with counsel. See Sin v. Fischer, No. 01 Civ. 9376 (GEL), 2002 WL 1751351, at *2 (S.D.N.Y. July 26, 2002) ("It would be an unreasonable application of [Supreme Court] law if a court, absent a compelling necessity, denied a non-English speaking defendant the right to understand the proceedings against him, or to consult with counsel during his trial.").

The determination of whether a defendant is capable of communicating in English, and able to meaningfully participate in a court proceeding without the aid of an interpreter, is a factual one which, as the Supreme Court suggested in Perovich,

rests in the discretion of the trial court. See Perovich, 205 U.S. at 91, 27 S. Ct. at 458; Guerrero v. Harris, 461 F. Supp. 583, 586 (S.D.N.Y. 1978) ("[I]t is clearly within the court's discretion to decide whether an interpreter is necessary." (citing United States v. Desist, 384 F.2d 889, 903 (2d Cir. 1967)); see also United States v. Carrion, 488 F.2d 12, 14-15 (1st Cir. 1973) (holding that trial court should be granted wide discretion in determining whether an interpreter is necessary); Vellon v. David, Nos. 01 Civ. 6505 (JBW) & 03 Misc. 0066 (JBW), 2003 WL 23185761, at *6 (E.D.N.Y. Nov. 11, 2003) (finding that trial court's factual conclusion that the defendant could communicate in English, even though he articulated better in his native tongue, was eminently reasonable, and, therefore, absence of interpreter at trial did not result in a constitutional violation); cf. United States v. Ademaj, 170 F.3d 58, 62-63 (1st Cir. 1999) ("The capacity to converse in English, and any concomitant need for an interpreter, represent fact-intensive inquiries implicating such considerations as the defendant's intelligence, education, and the length of time he has been exposed to an English-speaking environment, as well as the relevant English-language skills of the defendant and any foreign-language skills of defense counsel.").

Here, the Appellate Division found that the record "was replete with evidence of [Petitioner's] competency in English,

17

including his detailed colloquies with the court and his trial testimony." People v. Cambrero, 18 A.D.3d at 225, 794 N.Y.S.2d at 367. That finding is not merely presumed to be correct under AEDPA; it is also amply supported by the evidence and has not been rebutted by clear and convincing evidence.[4] The hearing court engaged in several discussions with Petitioner in English, and advised him that if he did not understand anything that was occurring, he should bring it to his attorney's and the court's attention. At no time during the hearing did Petitioner do so. Moreover, at the trial, where Petitioner did have the assistance of an interpreter, he chose to testify in English, and did so at some length, consulting with the interpreter only sporadically. Therefore, unlike the situation in Negron, this is not a case where Petitioner sat at the hearing in total incomprehension. Moreover, there is no evidence that the absence of an interpreter at the pretrial hearing resulted in any impairment of Petitioner's ability to assist at the hearing. Cf. Almanzar v. Portuondo, No. 97 Civ. 1859 (JG), 1999 WL 557517, at *7 (E.D.N.Y. July 29, 1999) (finding that even where a defendant was effectively absent from a Sandoval hearing because of the absence of an interpreter and his inability to speak or understand English, his presence would have been merely superfluous because

---

[4] Under AEDPA, deference is given to factual findings of both state trial and appellate courts. See Whitaker v. Meachum, 123 F.3d 714, 715 n.1 (2d Cir. 1997).

there was very little he could contribute, and thus his due process right to be present was not violated).

Because Petitioner has not rebutted the trial court's and Appellate Division's determinations — that he was able to comprehend and meaningfully participate in the pretrial hearing — with clear and convincing evidence, and has not shown that they were not merely erroneous, but were objectively unreasonable, the failure to provide Petitioner with an interpreter at the hearing was not an unreasonable application of Supreme Court law. Petitioner is therefore not entitled to relief on this claim.

## CONCLUSION

For the reasons set forth above, Petitioner's claim that he was deprived of the right to be present at pretrial proceedings should be denied and the Petition should be dismissed with prejudice. Further, because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court recommends that no certificate of appealability be issued. See 28 U.S.C. § 2253(c)(2); Lucidore v. N.Y. State Div. of Parole, 209 F.3d 107, 112 (2d Cir.), cert. denied, 531 U.S. 873, 121 S. Ct. 175 (2000). The Court further recommends that the district court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from its order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917 (1962).

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the

Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. <u>See</u> also Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Kimba M. Wood, United States District Judge, and to the chambers of the undersigned, Room 1660. Any requests for an extension of time for filing objections must be directed to Judge Wood. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 145, 106 S. Ct. 466, 470 (1985); <u>Frank v. Johnson</u>, 968 F.2d 298, 300 (2d Cir. 1992); <u>Small v. Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989).

Respectfully submitted,

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated:   February 27, 2007
         New York, New York

Copies sent to:

Luke Martland, Esq.
Assistant Attorney General
120 Broadway
New York, New York 10271

Manuel Cambrero
02-R-6093
Otisville Correctional Facility
P.O. Box 8
Otisville, New York 10963